# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## CASE NO.

MARK CHAMPAGNE, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

SEVEN-ONE-SEVEN PARKING SERVICES, INC.,

      Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Mark Champagne ("Plaintiff"), individually and on behalf of all others similarly situated, sues Defendant Seven-One-Seven Parking Services, Inc. ("717 Parking") for violations of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725 ("DPPA"), and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences and, as to all other matters, upon information and belief, including investigation by counsel:

## PRELIMINARY STATEMENT

1. This is a putative class action seeking statutory damages, declaratory relief, and permanent injunctive relief against 717 Parking for violations of the DPPA by knowingly obtaining, disclosing, and/or using personal information from a motor vehicle record for a purpose not permitted.

2. 717 Parking is a private parking monitoring and enforcement company

that monitors and enforces parking at private parking facilities it owns, operates, and/or manages, and is also retained by property owners and other parking operators to provide parking monitoring, operation, and/or enforcement services at private parking facilities in Florida and other states. 717 Parking is a private, for-profit company, not a governmental agency, and with respect to the private parking facilities at issue, does not act on behalf of any governmental agency when it monitors parking or issues private parking notices.

3.      As part of its enforcement practices, 717 Parking captures and records license plate numbers at private parking facilities, including through automated license plate recognition ("ALPR") technology and related software and/or through attendants or handheld devices, and uses those license plate numbers to generate and mail private parking notices resembling parking tickets. 717 Parking's published policies state that it uses ALPR technology at certain locations.

4.      In violation of the DPPA, 717 Parking knowingly and without consent obtained or caused to be obtained Plaintiff's and the Class Members' personal information, including their names and home addresses, from a "motor vehicle record" within the meaning of 18 U.S.C. § 2725(1) (including state motor-vehicle registration records) by matching license plate numbers captured or recorded through ALPR cameras and/or manual entry to state Department of Motor Vehicles ("DMV") records, and then disclosed and/or used that information to mail, or to have mailed, private parking invoices and related communications to Plaintiff's and the Class Members' homes for purposes not permitted by 18 U.S.C. § 2721(b).

5.      717 Parking's DPPA violations caused Plaintiff and the Class Members concrete harm, including a statutory invasion of privacy and loss of control over sensitive personal information. Plaintiff and the Class Members also spent time and effort reviewing the mailings, researching 717 Parking and its operations, attempting to understand why 717 Parking had their names and home addresses and how the data was obtained, and gathering and preserving records, and they experienced resulting anxiety and emotional distress.

6.      Plaintiff seeks, on behalf of himself and each member of the proposed Class, statutory damages under the DPPA in the amount of at least $2,500 per violation, reasonable attorneys' fees and costs, and such other relief as the Court determines appropriate, including a permanent injunction pursuant to 18 U.S.C. § 2724(b)(4) prohibiting 717 Parking from obtaining, disclosing, or using personal information from any motor vehicle record for any non-permitted purpose and requiring 717 Parking to identify and delete all such information in its possession, custody, or control, and to request deletion by any downstream recipients.

## PARTIES

7.      Plaintiff is an individual residing in Hillsborough County, Florida.

8.      717 Parking is a corporation organized under the laws of Florida with its principal place of business in Tampa, Florida.

## JURISDICTION AND VENUE

9.      This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the DPPA.

10.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because, on information and belief, the proposed Class consists of 100 or more members, at least one member of the proposed Class is a citizen of a state different from Defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11.     This Court has personal jurisdiction over 717 Parking because 717 Parking conducts substantial and not isolated business in Florida, including within this District, and the wrongful conduct giving rise to Plaintiff's claims occurred in Florida and within this District, including the obtainment, disclosure, and/or use of personal information and the mailing of the notices to Plaintiff.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Hillsborough County, Florida, including the capture or recording of Plaintiff's license plate number, the obtainment, disclosure, and/or use of personal information, and Plaintiff's receipt of the mailing at his home address.

13.     All conditions precedent to the institution and maintenance of this action have been performed, excused, waived, or have otherwise occurred.

**THE DPPA**

14.     The DPPA was enacted in 1994 to protect the privacy of licensed drivers and to limit misuse of personal information contained in motor vehicle records. The DPPA establishes a narrow list of enumerated permissible uses and imposes civil

liability for knowingly obtaining, disclosing, or using such information for a purpose not permitted under the DPPA. *See generally* 18 U.S.C. §§ 2721-2725.

15.    Specifically, the DPPA provides: "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." 18 U.S.C. § 2724(a).

16.    "Personal information" under the DPPA "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

17.    "Motor vehicle record" is defined to include "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C. § 2725(1).

18.    The DPPA provides a narrow set of permissible uses of personal information, enumerated in 18 U.S.C. § 2721(b), and also restricts resale and rediscclosure of personal information. 18 U.S.C. § 2721(c).

19.    The DPPA defines "express consent" to mean consent in writing, including consent conveyed electronically that bears an electronic signature. 18 U.S.C. § 2725(5).

20.    The DPPA authorizes actual damages, liquidated damages of at least $2,500 per violation, punitive damages for willful or reckless disregard of the law, an

award of reasonable attorneys' fees and other litigation costs, as well as equitable relief. 18 U.S.C. § 2724(b)(1)-(4).

## FACTS

### 717 Parking's enforcement practices

21.    717 Parking monitors and enforces parking rules at private parking facilities in Florida and other states, including the parking lot located at 1614 E 5th Ave in Tampa, Florida, as well as valet services for certain facilities, on behalf of itself and/or the properties' owners and primary parking operators. These facilities are privately owned and are not municipal, county, or state parking facilities.

22.    717 Parking captures and records vehicle license plate numbers at private parking facilities, including through ALPR technology and related enforcement systems and/or through attendants or handheld devices, as vehicles enter and exit private parking facilities or in providing valet services.

23.    When 717 Parking or its systems contend a parking or valet service charge is due, 717 Parking obtains, or causes to be obtained, the vehicle owner's name and home address from a motor vehicle record for the non-permitted purpose of facilitating private, after-the-fact invoicing and collection, and discloses or uses that information to cause a private parking invoice to be mailed, either by 717 Parking itself or by a mailing vendor acting at 717 Parking's direction.

24.    The resulting notice is a private parking invoice, not a traffic citation or ticket issued under any state or local law, and it is not filed with or processed by any court, clerk, or governmental agency.

25.    Upon information and belief, when a vehicle is flagged as allegedly owing a private parking charge, 717 Parking relies on motor vehicle records as the initial and primary source of the registered owner's name and home address. Vehicle owners are not required, as a condition of parking, to provide their names, home addresses, or other personal identifying information to 717 Parking at the point of entry, at exit, or through any on-site kiosk, attendant, or mobile application.

26.    717 Parking does not use DMV-sourced personal information to verify, correct, or supplement personal information previously provided directly by the driver or registered owner. Instead, 717 Parking obtains that DMV-sourced personal information for the first time from motor vehicle records and then uses it to create new enforcement records and to mail private parking invoices, follow-up notices, and collection letters to vehicle owners' homes.

27.    Upon information and belief, 717 Parking regularly captures or records license plate numbers, including through ALPR technology and/or attendants or handheld devices, and then obtains, or causes to be obtained, personal information from motor vehicle records, which 717 Parking uses or discloses to generate and mail, or to have mailed, private parking invoices, notices, or related communications, without a permissible purpose under the DPPA, at multiple garages and lots in Florida and in other states.

28.    Upon information and belief, 717 Parking mails, or causes to be mailed, such private parking invoices, generated using personal information obtained from motor vehicle records, to vehicle owners who reside outside Florida.

**Common harm and ongoing risk**

29.     717 Parking's conduct and DPPA violations caused Plaintiff and the Class Members the harms described above and in the Plaintiff-specific allegations below.

30.     Upon information and belief, 717 Parking continues to enforce parking at the lot described above, and parking and valet services at other nearby facilities, using ALPR technology and/or attendants or handheld devices to record license plate numbers and obtain personal information from motor vehicle records, and 717 Parking retains Plaintiff's license plate number and personal information, including his name and home address, in its enforcement databases and/or makes that information available to its third-party vendors (including mailing and collections vendors) for continued use or disclosure, creating an ongoing risk of repeated privacy violations.

31.     Upon information and belief, 717 Parking maintains enforcement account histories and related records containing license plate numbers and DMV-sourced personal information for extended periods and uses those records to send follow-up notices and/or to refer accounts for additional collection activity, including Plaintiff's account history arising from the 2025 incident described below. Absent injunctive relief requiring deletion and cessation of use and redisclosure, Plaintiff remains subject to ongoing risk of repeated disclosure or use of his personal information even if he never again parks at a facility serviced by 717 Parking.

32.    Plaintiff's claims under the DPPA arise from 717 Parking's independent decision to obtain, disclose, and/or use personal information from motor vehicle records and do not depend on the existence, formation, enforceability, or breach of any alleged parking contract. Nor does Plaintiff seek to enforce any alleged parking contract.

33.    Upon information and belief, 717 Parking also regularly transmits personal information obtained from motor vehicle records related to unpaid accounts to third-party collection vendors and other third-party service providers for additional collection activity.

34.    Upon information and belief, 717 Parking does not, as a regular practice, file civil actions or arbitrations to collect alleged private parking charges, and instead relies on notices and collection communications.

35.    Instead, 717 Parking uses DMV-sourced personal information solely to send standardized private parking invoices, follow-up notices, and collection letters to vehicle owners' homes, and to threaten additional fees and collection activity, in an effort to coerce payment without resort to any court or arbitral forum.

36.    717 Parking's obtainment, disclosure, and use of DMV-sourced personal information are not undertaken to file, prosecute, defend, or resolve any specific civil, criminal, administrative, or arbitral proceeding, including any investigation in anticipation of litigation, service of process, or enforcement of judgments or orders.

37.    Rather, 717 Parking obtains and uses such information automatically whenever a vehicle is flagged as allegedly owing a private parking charge, regardless

of whether any lawsuit, arbitration, or other proceeding exists, is contemplated, or is ever pursued.

**Plaintiff Champagne**

38.    In or about 2025, Plaintiff parked his vehicle in a parking lot located at 1614 E 5th Ave in Tampa, Florida. 717 Parking, through ALPR technology and/or attendants or handheld devices used at that lot, captured or recorded the vehicle's license plate and recorded associated timing and/or duration data.

39.    Plaintiff never provided his name, home address, or other personal information to 717 Parking in connection with the parking facility at issue, whether through an on-site kiosk, attendant, mobile application, or website.

40.    When Plaintiff entered and parked in the lot, Plaintiff did not see, read, or agree to any posted "parking contract" or other written terms disclosing that 717 Parking would obtain his personal information from state motor vehicle records or purporting to waive rights under the DPPA.

41.    Plaintiff did not authorize 717 Parking to obtain, disclose, or use his personal information from any motor vehicle record, and did not provide "express consent" within the meaning of 18 U.S.C. § 2725(5).

42.    In particular, Plaintiff was not presented with and did not sign any written consent, nor did Plaintiff execute any electronic consent bearing an electronic signature, authorizing the release of DMV-sourced personal information to 717 Parking, or any of its vendors for billing, collection, or any other purpose.

43.    Upon information and belief, using Plaintiff's license plate, 717 Parking—working in concert with agents or resellers with access to such records—obtained Plaintiff's personal information, including his name and home address, from a motor vehicle record maintained by the Florida Department of Highway Safety and Motor Vehicles or another state motor vehicle agency, and used or disclosed such information to cause a private parking invoice to be mailed to Plaintiff's home address, which Plaintiff received, demanding payment for an alleged private parking charge.

44.    717 Parking knowingly obtained, disclosed, and/or used Plaintiff's personal information without his authorization or consent, and its obtainment, disclosure, and/or use of his personal information for mailing an invoice was not a permitted use under 18 U.S.C. § 2721(b).

45.    As a result, Plaintiff faces a real and immediate risk of being subjected again to the same unlawful obtainment, disclosure, and/or use of his personal information due to 717 Parking's ongoing retention and potential redisclosure of his personal information to third parties, including but not limited to mailing and collection vendors, creating an ongoing risk of repeated privacy violations, irrespective of whether Plaintiff parks in a facility serviced by 717 Parking in the future.

## CLASS ALLEGATIONS

### Proposed Class

46.    Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23. The Class that Plaintiff seeks to represent is defined as:

**All persons in the United States whose personal information contained in a motor vehicle record was obtained, disclosed, and/or used by 717 Parking for purposes not permitted under the DPPA during the four-year period prior to the filing of this lawsuit through the date of class certification**.

47.     Excluded from the Class are 717 Parking, its agents, affiliates, parents, subsidiaries, any entity in which 717 Parking has a controlling interest, and any of 717 Parking's officers, directors, affiliates, legal representatives, and employees, and any judge presiding over this matter and the members of their immediate families and judicial staff.

**Numerosity**

48.     The Class consists of hundreds, if not thousands, of members, and certainly more than forty, given 717 Parking's standardized practice of obtaining, disclosing, and/or using personal information obtained from a motor vehicle record and mailing private parking invoices at scale across multiple garages and lots in Florida and other states. Thus, joinder of all members is impracticable.

49.     Class Members can be identified through objective evidence, including 717 Parking's enforcement logs, license-plate capture or recording logs (including ALPR data and/or manual entry records), motor vehicle record access logs, mailing address files, and data from 717 Parking's violations payment or appeals systems, as well as customer service and appeals databases. These sources provide common, centralized proof suitable for class-wide identification.

**Commonality/Predominance**

50.     The central question in this case is whether 717 Parking's standardized practice of obtaining, disclosing, and/or using personal information from motor vehicle records to pursue private parking charges, including by mailing private parking invoices and related communications and by transmitting personal information to third-party vendors for collection activity, violates the DPPA.

51.     There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members. Among them are:

      a. whether 717 Parking knowingly obtained, disclosed, and/or used Plaintiff's and the Class Members' personal information from a motor vehicle record;

      b. whether any permissible use under 18 U.S.C. § 2721(b) applies to 717 Parking's conduct;

      c. whether 717 Parking is liable for damages under 18 U.S.C. § 2724(b) and, if so, the amount of such damages; and

      d. whether 717 Parking has acted or refused to act on grounds that apply generally to the Class such that injunctive relief is appropriate respecting the Class as a whole.

52.     The common questions in this case are capable of having common answers, are provable with common evidence, and Plaintiff and the Class Members will have identical claims capable of being efficiently adjudicated and administered in this case.

**Typicality**

53.     Plaintiff's claims are typical of those of the Class because Plaintiff—like all members of the Class—had his protected personal information from motor vehicle records, maintained by a state motor vehicle department, obtained, used, and/or disclosed by 717 Parking for the same non-permitted purposes under the DPPA.

**Adequacy of Representation**

54.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and have retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**Superiority**

55.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23(b)(3) because:

      a. Joinder of all Class Members would create extreme hardship and inconvenience for the affected Class Members, who reside throughout the United States;

      b. Individual claims by Class Members are impracticable because the costs to pursue individual claims exceed the value of what any one Class Member has at stake. As a result, individual Class Members have no strong interest in prosecuting and controlling separate actions;

c.  The interests of justice will be well served by resolving the common disputes of potential Class Members in one forum;

d.  Individual suits would not be cost effective or economically maintainable as individual actions;

e.  The requested injunctive relief is indivisible and will provide uniform relief by prohibiting 717 Parking from obtaining, disclosing, and/or using personal information from a motor vehicle record absent a permissible purpose, and by requiring the purge of such personal information stored in 717 Parking's records; and

f.  The action is manageable as a class action.

<u>**COUNT I**</u>
**Violation of Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725**
**On Behalf of Plaintiff and the Class**

56.  Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

57.  Under the DPPA, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a).

58.  "Personal information" under the DPPA "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone

number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

59.    "Motor vehicle record" is defined to include "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C. § 2725(1).

60.    Plaintiff and the Class Members are "persons" as defined by 18 U.S.C. § 2725(2) and are "individual[s] to whom the information pertains" within the meaning of 18 U.S.C. § 2724(a).

61.    Plaintiff and the Class Members' names and addresses are "personal information" under the DPPA.

62.    717 Parking knowingly obtained, disclosed, and/or used Plaintiff's and the Class Members' personal information from motor vehicle records, directly or through agents or resellers with access to such records, without consent or authorization of any kind, including without any "express consent" within the meaning of 18 U.S.C. § 2725(5).

63.    717 Parking violated the DPPA by knowingly obtaining, disclosing, and/or using Plaintiff's and the Class Members' personal information from motor vehicle records for a purpose not permitted under the DPPA, including by cross-referencing license plates (captured or recorded through ALPR and/or manual entry) to obtain registrants' names and home addresses from a motor vehicle record and using that information to pursue private parking charges, such as by mailing or causing to

be mailed private parking invoices, delinquency notices, and related communications to Plaintiff's and the Class Members' homes.

64. No permissible use under 18 U.S.C. § 2721(b) applies to 717 Parking's conduct, and Plaintiff and the Class Members did not provide "express consent" as defined in 18 U.S.C. § 2725(5). 717 Parking's conduct was not for use by a government agency, not related to motor-vehicle safety or recall, not for insurance underwriting or claims, not for fraud prevention, and not for any other enumerated purpose. Nor did 717 Parking obtain, disclose, or use DMV-sourced personal information "in connection with any civil, criminal, administrative, or arbitral proceeding," including any "investigation in anticipation of litigation," "service of process," or "execution or enforcement of judgments and orders," within the meaning of 18 U.S.C. § 2721(b)(4).

65. 717 Parking's conduct also was not "specifically authorized under the law of the State" within the meaning of 18 U.S.C. § 2721(b)(14), because no state statute authorizes 717 Parking, in its role as a private enforcement and collections vendor, to obtain, disclose, or use DMV-sourced personal information to pursue private parking charges.

66. As a result of 717 Parking's DPPA violations, Plaintiff and the Class Members suffered the harms alleged above, including concrete injuries sufficient to confer Article III standing.

67. Plaintiff faces a real and immediate threat of repeated injury. 717 Parking retains Plaintiff's personal information in its systems for further disclosure or use, including potential transmission of his personal information to third-party collection

-17-

vendors for additional collection efforts, and continues to operate the same license plate capture or recording and motor vehicle record lookup practices challenged in this action. Because 717 Parking has already obtained and stored Plaintiff's personal information and shares it with downstream vendors, including but not limited to mailing and collections vendors, Plaintiff remains exposed to further disclosure and use unless the Court orders cessation and deletion.

68.    717 Parking maintains an ongoing policy and practice of obtaining, disclosing, and/or using personal information from motor vehicle records to mail, or cause to be mailed, private parking invoices and related communications, and 717 Parking retains Plaintiff's personal information in its records for further use or disclosure, including by transmitting personal information relating to unpaid accounts to third-party agents and collection vendors for further collection activity.

69.    717 Parking's conduct was willful and in reckless disregard of the DPPA. 717 Parking designed and implemented a standardized program to obtain, use, and disclose DMV-sourced personal information to pursue private parking charges despite the absence of any permissible purpose under 18 U.S.C. § 2721(b).

70.    Monetary relief alone cannot prevent future obtainment, disclosure, redisclosure, or use of Plaintiff's personal information or require deletion of data already in 717 Parking's systems and records and in the hands of third-party collection vendors and other recipients. Absent injunctive relief, 717 Parking will remain free to continue obtaining, retaining, and redisclosing Plaintiff's and the Class Members'

personal information in violation of the DPPA and Plaintiff has no practical means to ensure deletion or cessation of use and redisclosure by 717 Parking and its vendors.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief:

a.      An order certifying this case as a class action on behalf of the Class as defined above, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

b.      An order declaring that 717 Parking's conduct violates the DPPA;

c.      An award of actual and statutory damages of at least $2,500 for each violation of the DPPA for Plaintiff and each member of the Class, pursuant to 18 U.S.C. § 2724(b)(1);

d.      An award of punitive damages for willful or reckless disregard of the DPPA, pursuant to 18 U.S.C. § 2724(b)(2);

e.      An injunction permanently enjoining 717 Parking, and those in active concert with it:

(i)      from obtaining, disclosing, or using personal information from a motor vehicle record to pursue private parking charges, including by mailing or causing to be mailed private parking invoices, delinquency notices, or related communications, or for any other purpose not permitted under 18 U.S.C. § 2721(b);

(ii)      requiring the identification and deletion of all personal information

obtained, directly or through an agent, reseller, or other third party, from a motor vehicle record relating to Plaintiff and the Class for non-permitted purposes; and

(iii)    requiring 717 Parking to notify and request that all mailing, collection, and other vendors and recipients of such personal information delete it and certify deletion to the Court within a reasonable time period.

f.      An award of reasonable attorney's fees and costs, pursuant to 18 U.S.C. § 2724(b)(3);

g.      An award of pre-judgment and post-judgment interest as allowed by law; and

h.      Such further and other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demands a trial by jury on all issues so triable.

Dated: February 2, 2026

Respectfully submitted,

**MARK FERRER & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130

By: *s/Charles M. Garabedian*
Charles M. Garabedian, Esq.*
Florida Bar No. 1000974
Victor Sanabria, Esq.
Florida Bar No. 125292
victor@mfh.law
charles@mfh.law
eservice@mfh.law

*Lead Counsel for Plaintiff Mark
Champagne*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically on the Court's

CM/ECF docket on February 2, 2026, which served same electronically upon all

counsel of record.

By: *s/ Charles M. Garabedian*